IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal No. 4:08-cr-00070 |
| v. : | |
| : | (Chief Judge Kane) |
| SHAWN COOYA and RITZ WILLIAMS, : | |
| Defendants : | |

**MEMORANDUM**

Presently pending before the Court are the Government's motion to amend its notices of intent to seek the death penalty pursuant to 18 U.S.C. § 3593(a) with respect to Defendants Shawn Cooya and Ritz Williams (Doc. No. 506) and Defendants' unopposed motion to continue jury selection and trial (Doc. No. 519). The Court held a hearing on these motions on May 7, 2012. For the reasons stated more fully herein, the Court will grant both motions.

**I. DEFENDANTS' MOTION TO RESCHEDULE JURY SELECTION AND TRIAL**

On February 14, 2008, a grand jury returned an indictment charging both Defendants with one count of first-degree murder and charging Defendant Williams with an additional count of possession of a prohibited object. (Doc. No. 1.) Trial was initially scheduled to be held before the Honorable James F. McClure, Jr. on May 6, 2008 (Doc. No. 19),[1] but trial has since been continued four times (Doc. Nos. 29, 173, 267, 424, 457). Trial was scheduled to be held before this Court on April 10, 2012, but the Court rescheduled that date "[b]ased upon the unavailability of Attorney [Ronald C.] Travis because of the pending federal penalty phase retrial in" United States v. Hammer, No. 96-cr-239 (M.D. Pa.). (Doc. No. 424.) Trial is currently scheduled to commence on November 5, 2012. (Doc. No. 457.)

---

[1] The case was reassigned to this Court on December 21, 2010.

1

In their motion to continue jury selection and trial, Defendants request, once again, that this Court modify its trial calendar to accommodate the rescheduling of the retrial in <u>Hammer</u>, currently set to commence on February 5, 2013, because Attorney Travis serves as counsel in both <u>Hammer</u> and this action. (Doc. No. 519 ¶¶ 2-5.) Further, Attorney James A. Swetz has informed the Court that he is counsel in a criminal homicide trial set to commence on October 2, 2012, in the Court of Common Pleas of Monroe County, Pennsylvania. (<u>Id.</u> ¶ 10a.) Based on these conflicts, defense counsel requests that trial in this action be rescheduled to commence no earlier than August 5, 2013. (Doc. No. 519 ¶ 11.)

The Court appreciates the seriousness of this action and the difficulties that Attorneys Travis and Swetz would face in serving as counsel in complex, lengthy trials held in quick succession to one another. But the Court also recognizes the toll that further continuances will have on the Court, the Government, the victim's family, and the taxpayers. After weighing these concerns, the Court finds that it would be unfair to defense counsel to commence trial on November 5, 2012. Attorney Travis, however, indicated at the May 7, 2012 hearing that it may be possible that the retrial in <u>Hammer</u> will be rescheduled again. If that were to happen, the Court sees no reason why trial in this action could not commence in early 2013. Accordingly, the Court will grant Defendants' motion to continue jury selection and trial and vacate the order scheduling this matter for jury selection and trial on November 5, 2012, but the Court will defer setting a new trial date until conferring with the respective attorneys regarding the status of <u>Hammer</u> at a later date.

## II. THE GOVERNMENT'S MOTION TO AMEND ITS NOTICES OF INTENT TO SEEK THE DEATH PENALTY

The Government seeks to amend its notices of intent to seek the death penalty with respect to each Defendant to include the non-statutory aggravating factor of victim impact. (Doc. No. 506.) Specifically, the Government seeks to add the following language in its amended notices of intent:

> As demonstrated by the victim's personal characteristics as an individual human being and the impact of the death upon the victim and the victim's family and friends, the defendant caused injury, harm, and loss to the victim and the victim's family and friends, including but not limited to Gertrude Boursaw, Dustin Allery, James Renville, Natalie Allery, and Rita Hochstein.[2]

(Doc. No. 506-1 at 4; Doc. No. 506-2 at 4.) The parties do not dispute that "[v]ictim impact testimony serves the legitimate purpose of informing the jury of the specific harm caused by the crime, thereby promoting an accurate assessment of [the] defendant's moral culpability and blameworthiness." United States v. Stitt, 760 F. Supp. 2d 570, 580 (E.D. Va. 2010) (citation and internal quotation marks omitted). Defendants, however, contend that the Government's motion to amend its notices of intent to seek the death penalty must be denied for two reasons: (1) the Government deliberately delayed in notifying Defendants that it would present victim impact evidence during the penalty phase of the trial; and (2) allowing victim impact evidence to be presented at this juncture would prejudice Defendants. (Doc. No. 515 at 22.)

Under the Federal Death Penalty Act, a "court may permit the attorney for the government to amend the notice upon a showing of good cause." 18 U.S.C. § 3593(a). The

---

[2] At the May 7, 2012 hearing, counsel clarified that Gertrude Boursaw, Dustin Allery, James Renville, Natalie Allery, and Rita Hochstein were Alvin Allery's mother, nephew, brother, daughter, and sister, respectively.

statute, however, does not provide a definition of good cause. In their brief in opposition and at the May 7, 2012 hearing, Defendants suggested that some courts have required the Government to show "excusable neglect" to amend a notice of intent to seek the death penalty. (Doc. No. 515 at 15, 17, 21-22.) Defendants, however, have failed to identify any decision in which a court held that the Government must demonstrate excusable neglect in this context,[3] and the Court "has only found cases that stand for the proposition that good cause is shown whenever the government can demonstrate that there was no deliberate delay by the government and no prejudice to the defendant." United States v. Barnes, 532 F. Supp. 2d 625, 629 (S.D.N.Y. 2008); see also United States v. Taveras, 436 F. Supp. 2d 493, 502 (E.D.N.Y. 2006) ("Good cause is demonstrated where the government's application was made in good faith and the defendant was not prejudiced.") (citation and internal quotation marks omitted); United States v. Pretlow, 770 F. Supp. 239, 242 (D.N.J. 1991) ("A definition of good cause which emphasizes the good faith

---

[3] Defendants cite three cases in which defendants argued that the Government should be required to show excusable neglect: Pretlow, Barnes, and United States v. Hammer, No. 96-cr-239 (M.D. Pa. Oct. 10, 1997). (Doc. No. 516 at 15, 17, 21-22.) The excusable neglect standard, however, was not applied in any of these cases. See Barnes, 532 F. Supp. 2d at 629 (rejecting the defendants' argument that the Government must show excusable neglect); Pretlow, 770 F. Supp. 239 at 242 ("[T]his court sees no reason to insist on the more stringent excusable neglect standard."); Hammer, No. 4:96-cr-239, at 6 (denying the Government's motion to amend its notice of intent but not determining which standard applies).

At the May 7, 2012 hearing, counsel for Defendants also suggested that the Honorable Malcom Muir, in Hammer, and the Honorable Sylvia Rambo, in United States v. Bradley, 880 F. Supp. 271 (M.D. Pa. 1994), applied a different standard than the one articulated in Barnes, Taveras, and Pretlow. No standard, however, is explicitly articulated or applied in either decision. See Hammer, No. 96-cr-239, at 6 ("In the present case whether the government's motion is measured by the standard enunciated in Pitera and Pretlow or the more stringent 'excusable neglect' standard, we are not convinced that there is 'good cause' to grant the motion."); Bradley, 880 F. Supp. at 285 (stating only that "the court will not allow the government to add . . . [non-statutory aggravating] factors . . . since the government has not shown good cause for initially failing to include these factors in its notice to the defendant stating its intent to seek the death penalty.").

4

of the government and any resulting prejudice to the defendant is sufficient to protect the defendant's and the public's interest in adequate notice."). Accordingly, the Court concludes that the Government is not required to show excusable neglect to amend a notice of intent to seek the death penalty but, rather, must show that there was no deliberate delay and that Defendants will not be prejudiced.

The Government contends that it did not deliberately delay in moving to amend its notices of intent because it developed the victim impact evidence during interviews with Allery's family members between February and March 2011 and then filed its motion to amend within one year.[4] (Doc. No. 506 at 3.) In opposition, Defendants suggest that the Government developed this evidence prior to February 2011. Specifically, Defendants contend that the United States Attorney for the Middle District of Pennsylvania was in contact with Allery's family members in September 2009, and that the United States Attorney "was aware that the mother and sister of Mr. Allery wanted the death penalty pursued since learning of the death of Mr. Allery." (Doc. No. 515 at 5.) To support this contention, Defendants quote portions of letters written by Allery's mother and sister in which they express their desire for the Government to seek the death penalty. (Id. at 6-8.)

First, the Court notes that a family member's articulation that the death penalty should be sought does not necessarily qualify as victim impact evidence. See Payne v. Tennessee, 501 U.S. 808, 823, 827 (1991) (stating that victim impact evidence consists of evidence "about the impact of the murder on the victim's family" and "is designed to show . . . [the] victim's

---

[4] In its motion, the Government asserts that it developed the victim impact evidence between February and May 2011, but counsel for the Government informed the Court at the May 7, 2012 hearing that all such evidence was developed between February and March 2011.

5

uniqueness as an individual human being."). Even assuming arguendo, however, that the Government did not begin developing victim impact evidence in this matter until February 2011, at the May 7, 2012 hearing, counsel for the Government could not articulate any compelling reasons for the Government's one-year delay in filing the motion to amend its notices of intent to include the non-statutory aggravating factor of victim impact. In fact, Government counsel could not even articulate the exact nature of the victim impact evidence that would be presented during the penalty phase of the trial.

Second, Defendants have pointed to evidence that suggests that the Government has failed to correct some of Allery's family members' misunderstandings regarding Allery's death. Specifically, at the May 7, 2012 hearing, defense counsel pointed to a document dated March 10, 2011, describing that Ms. Boursaw, Allery's mother, saw that her son's eyes had been gouged out and had been packed with gauze prior to his burial. Both Defendants and the Government agree that Allery's eyes were intact after the altercation with Defendants. According to Defendants, the Government's failure to correct this – and any other – misunderstanding regarding Allery's death has tainted the beliefs of Allery's family members and will, therefore, inflame their testimony during the penalty phase of the trial. Moreover, Defendants contend that defense counsel terminated efforts to engage in defense-initiated victim outreach with Allery's family because the Government made this request and because the Government had not included victim impact as a non-statutory aggravating factor in its July 30, 2009 notices of intent to seek the death penalty.[5] (Id. at 13 n.1.)

---

[5] Defense-initiated victim outreach has been explained as follows:

> Rooted in traditional notions of restorative justice and conflict

After considering the above arguments, the Court will grant the Government's motion to amend its notices of intent to seek the death penalty to include the non-statutory aggravating factor of victim impact. In doing so, the Court is mindful of the fact that the Government has failed to present sufficient reasons for its delay in notifying Defendants of its plan to present victim impact evidence during the penalty phase of the trial. In fact, at the May 7, 2012 hearing, counsel for the Government asserted that victim impact evidence is introduced in nearly every capital trial, thereby acknowledging that the Government should be well aware from the beginning of a capital prosecution that such evidence is a relevant non-statutory aggravating factor. Nevertheless, the Court finds that the Government neither deliberately delayed in amending its notices of intent to seek the death penalty nor acted in bad faith.

---

> transformation, defense-initiated victim outreach ("DIVO") [is] a method of engaging in dialogue with surviving family members and continues to evolve. One of the primary lessons learned during this evolution has been that the interests of the defense team and the interests of the victims are far from being mutually exclusive. In fact, once dialogue begins, it is hard to believe that this natural flow of human interaction was previously untapped. Victims have questions only the offender can answer. Victims want to be heard not only by the community at large, but specifically by the offender and his or her representatives. The offender is the one the victims want to tell about their pain. Victims need to be heard, and they need to be heard by the offenders and by the capital defense community.
>
> . . . .
>
> This process ideally begins long before trial. The first step for a capital defense team is to find the appropriate person to reach out to the victim's family on their behalf.

Mickell Branham & Richard Burr, Understanding Defense-Initiated Victim Outreach and Why It Is Essential in Defending a Capital Client, 36 HOFSTRA L. REV. 1019, 1023 (2008) (footnotes omitted).

Regarding the prejudice caused by the Government's delay, the Court finds that any prejudice will be greatly minimized by virtue of the rescheduling of trial. In fact, should trial be rescheduled to commence on August 5, 2013 – the earliest date proposed by Defendants – Defendants will have been on notice for nearly one-and-a-half years that the Government plans to present victim impact evidence during the penalty phase. Moreover, the Court recognizes that denying the Government's motion to amend its notices of intent to seek the death penalty will prejudice the family members of Allery by depriving them of their "right to be reasonably heard at any public proceeding in the district court involving . . . sentencing."[6] 18 U.S.C. § 3771(a)(4).

Finally, the Court recognizes that there is a dispute regarding the nature of the victim impact evidence that the Government will ultimately present during the penalty phase of the trial. In light of this dispute, the Court will grant the Government's motion to amend its notices of intent to seek the death penalty but will grant Defendants leave to file a subsequent motion to exclude certain victim impact evidence – once the Government specifically identifies the nature of such evidence – on grounds of prejudice.

## III. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to reschedule jury selection and trial (Doc. No. 519) and the Government's motion to amend its notices of intent to seek the death penalty (Doc. No. 506). An order consistent with this memorandum follows.

---

[6] "In the case of a crime victim who is . . . deceased, the legal guardians of the crime victim or the representatives of the crime victim's estate, family members, or any other persons appointed as suitable by the court, may assume the crime victim's rights under this chapter . . . ." 18 U.S.C. § 3771(e).

8

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal No. 4:08-cr-00070 |
| v. : | |
| : | (Chief Judge Kane) |
| SHAWN COOYA and RITZ WILLIAMS, : | |
| Defendants : | |

## ORDER

**AND NOW**, on this 18th day of June 2012, **IT IS HEREBY ORDERED THAT:**

1. Defendants' motion to reschedule jury selection and trial (Doc. No. 519) is **GRANTED**;

2. The Court's order scheduling jury selection and trial to commence on November 5, 2012 and establishing a cutoff date of September 15, 2012 for the filing of all pretrial motions (Doc. No. 457) is **VACATED**;

3. The Court will hold a telephone conference on December 4, 2012, at 1:30 p.m., to confer with the respective attorneys, select a new trial date, and establish a new deadline for the filing of pretrial motions; and

4. The Government's motion to amend its notices of intent to seek the death penalty to include the non-statutory aggravating factor of victim impact (Doc. No. 506) is **GRANTED**. The Court, however, will grant Defendants leave to file a motion objecting to the victim impact evidence on grounds of prejudice after the Government identifies the nature of the evidence it plans to present during the penalty phase of the trial.

         S/ Yvette Kane
         Yvette Kane, Chief Judge
         United States District Court
         Middle District of Pennsylvania